## Moses Knapp *versus* Isaac R. Clark.

Where a judgment for yearly damages has been recovered for flowing plain-tiff's land, the judgment is a charge upon the estate complained of, and the owner and occupier of the mill and dam, is liable in an action of debt, not only for what may fall due while he is owner, but for all that was in arrear before his title commenced.

In an action on such a judgment, an amendment, stating the *time* and *mode* of the acquirement of the defendant's title to the mill and dam, it having been already alleged that the defendant owned and occupied the same, introduces no new cause of action, and is admissible.

The statute of limitations does not apply to claims for flowage under a judg-ment.

Debt. The declaration set forth a judgment of the Court of Common Pleas, recovered May term, 1836, by the plaintiff against Levi Cram and Benjamin Plummer, Jr., for damages in flowing the plaintiff's land, by the mill-dam of said Cram and Plummer; and recited the petition, the appointment of com-missioners, who fixed the annual damages at eighteen dollars, and the subsequent verdict of a jury and judgment thereon, fixing the annual damages at sixty-seven dollars and twenty-five cents, and giving the right to flow the plaintiff's land the whole year. It also alleged that the defendant succeeded Cram and Plummer, in the ownership of the mill and dam, and that

he is now the owner of the same; and that said damages were unpaid from the 11th of June, 1836, to the date of his writ, December 20, 1845.

Against the objection of defendant, the plaintiff, under leave of the District Court, added a third count to his writ, and it was objected to as exhibiting a new cause of action.

At the trial, before WELLS, J., the defendant moved for a nonsuit, on the ground that the original writ exhibited no cause of action, and that the defendant was not liable for damages that accrued before he became owner or occupant of the mill; and that the third count, if it differed in effect from the others, involved a new cause of action, and was illegally admitted. This motion was overruled, and the cause went to trial under the plea of *nil debet,* with brief statements of accord and satisfaction, payment, release and limitations.

The plaintiff introduced record copies of a deed of quit-claim of one-half of the premises, on which the mill and dam are situated, from Geo. A. Pierce to defendant, dated June 6, 1845; and of a deed of quitclaim of the other half of said premises, from John Mooney to the defendant, dated May 9, 1845, and introduced other copies of deeds which connected the title of said defendant with the title of said Levi Cram and Benjamin Plummer.

The defendant called Gilman Cram, who testified that he bought the premises where the mill and dam stand, in January, 1838, and continued to own and occupy them until June 1, 1845. That in the fall of the second, or spring of the third year after his occupation commenced, he made an agreement with the plaintiff, that he would draw the water off, the first of June in each year, and keep it off till after the hay was cut on the plaintiff's meadow, and that the plaintiff should not claim any damages, if the water was kept drained off as aforesaid; and that there was no specific time mentioned for the continuance of the agreement. There was also evidence tending to show that the agreement was performed, up to the time said Cram left the mill in June, 1845, and that the plaintiff,

all that time, cut as good a crop of hay on his meadow as he ever did.

The plaintiff introduced testimony tending to show that no such agreement was ever made, and that if made, it was not performed, and that it was violated in particular instances by leaving the gate down, and had injuriously affected the plaintiff's crop of hay. The defendant offered to show the price at which the plaintiff had sold his hay during those years, but it was excluded by the Court.

The defendant contended he was not liable for annual damages that accrued *before* he became the owner or occupant of the mill; that those might have been collected of the prior owners, who were responsible, and by requiring security as provided by the statute; and that it was by the plaintiff's own laches that they had not been collected; that the statute of limitations was a bar to all, which had been due more than six years; that if the gate had been at any time left down, or the agreement had been in any other respect violated, this was only a ground for an action of damages, or a reason why the whole annual damages should not be remitted; but did not put an end to the agreement; that Cram, having in pursuance of said agreement, forborne to exercise his right of using his mill and flowing plaintiff's land from the first of June until after plaintiff's grass was off, for five years, and the plaintiff in pursuance of said agreement having cut his hay during those years, the agreement was not now to be laid aside on account of some slight and temporary violation from which plaintiff suffered little or no injury.

The Judge instructed the jury, that the defendant, claiming through mesne conveyances under those against whom the original judgment was recovered, was liable for the yearly damages, that accrued before he purchased and were unpaid; and that they should return their verdict for the plaintiff for sixty-seven dollars and $\frac{25}{100}$ a year, for the annual damages, from June 11, 1836, to June 11, 1845, with interest on each years damages from the end of the year when it became payable up to the time of the judgment, unless they found that the agree-

ment, set up by defendant, constituted a defence for some of those years; and if so, they would return their verdict for the years not affected by said agreement; that if they found the agreement set up was actually made and performed, it would amount to an accord and satisfaction so long as it was performed; that the agreement was the accord, the execution of it was the satisfaction; and that the agreement must be executed, or it would be no defence; that when it ceased to be executed it would be at an end; that if they found it executed the first year and not executed the second year, it could not be revived the third or succeeding years, without the assent of the plaintiff.

The jury returned a verdict for plaintiff for $875,95, " no agreement being sustained."

Exceptions were filed to the rulings and instructions and it was also agreed that, if the verdict was too large it might be reduced to such sum as the Court should think proper, and that the verdict might be set aside, and a nonsuit ordered, if the plaintiff is not entitled to recover any thing upon such amendments of his declaration, as the Court shall deem legal.

The amendment allowed by the District Court sufficiently appears in the opinion.

*Prentiss* and *Rawson,* for defendant.

Defendant is not liable for annual damages that accrued before he became the owner and occupant.

1st. The original petition and judgment being before the Revised Statutes, the damages fixed by that judgment must be regulated by the laws of that period. If by those laws the defendant is not liable, the Revised Statutes cannot make him so.

The Revised Statutes provide for all future complaints for flowage. They prescribe the proceedings and remedies, but they do not attempt to interfere with the past; they make no reference to any old judgments. The Legislature had no power to create a new liability on an old judgment, and they certainly have not attempted to do it.

2d. The statute of 1821, chap. 45, and the decisions under it, fix the extent of the liability of the purchaser of a mill to the damages of the year, when he takes possession. It has been decided, that he is bound by the *amount* of the annual damages, fixed by the judgment against his grantor, and as the damages of the year, when he takes possession, cannot be divided, and he is liable for that part of the year after he purchases, he is liable for the whole year. This question was before the Court and was decided in *Lowell* v. *Shaw*, 15 Maine, 242.

In the case of *Commonwealth* v. *Ellis*, 11 Mass. 462, relied upon by the plaintiff, this question was not *presented, nor argued, nor noticed by the Court*, but the Court, (though the case did not call for it,) make the remark, " that the judgment fixing the annual damages has the effect of a *composition deed*, and that the *composition* thus established runs with the land and binds the grantees, that is, the grantees are bound by the *amount* of damages thus fixed, unless they have a new estimation under the statute. It is not said that the damages run with the land, and that the grantee is obliged to pay those that accrue under a former owner.

But the same question, or one involving the same principle, has been decided in *Holmes* v. *Drew*, 7 Pick. 141.

The marginal note is, " *that a mill owner is not liable for damages done by flowing before his title commenced.*

The statute provides, that the commissioners or jury shall estimate the damages done by flowing, without saying by whom done, and the Court have decided, that this means only the damages done by the defendant, and not those done by a former owner.

So the statute provides, that when the annual damages have been ascertained, the owner of the land may bring his action of debt for the same, but does not say against whom the action is to be brought. Must it not be brought against the owner or occupant for the annual damages so fixed and accruing, while he was owner or occupant?

The plaintiff's laches in not collecting of the former owners was relied upon by defendant in his brief statement, and defendant's counsel requested the Judge to instruct the jury, that if the damages accruing under former owners and occupants might have been collected of them, the defendant was not liable for them. No such instruction was given.

The case of *Lowell v. Shaw* goes on the ground that there is laches, when the right of action against the former owner exists. In that case, it did not, as a year's damage cannot be divided. And, as the statute gives the plaintiff *security for his damages,* chap. 45, § 7, it is always laches not to collect of a former owner.

All annual damages which had been due more than six years when the action was commenced, were barred by the statute of limitations. R. S. c. 146, § 1.

The action is not founded on the judgment, but on the annual flowing. The judgment fixing the annual damages *is mere evidence,* and for this reason, we were allowed to plead " *nil debet.*"

Where a judgment ascertains a certain sum to be due from A to B ; that record may be sued for twenty years. But here the judgment merely fixes the annual damages, if the *land is flowed* ; it does not determine, that it will be flowed, and that those damages are to be paid at all events, if the mill should be burned down, carried away or abandoned. Parole evidence is necessary to the plaintiff to make out his case.

Also this judgment does not determine *who shall sue* or *who shall be sued.* Plaintiff must show by *parole* that he is the owner of the land flowed, and that defendant is owner or occupant of the mill.

The instructions requested should have been given, and those given were wrong.

The agreement to waive damages having been substantially performed by Cram, and the benefit of that performance received by plaintiff, it should not have been thrown away on account of any slight and temporary violation of it, which could have been compensated in damages. *Campbell* v. *Jones,* C.

T. Reports, 570 ; *Boon* v. *Eyere*, 3 Blk. R. 1312 ; 1 Metcalf & Perkin's Digest, 116, sect. 400.

The plaintiff having contended, that the slightest violation of the agreement put an end to it ; and the defendant having requested instructions to the contrary ; and the Court having *refused* to give those instructions, but having instructed the jury, " that the contract must be executed, or it would be no defence" : — the jury of course understood the defendant's position to be negatived, and the plaintiff's sustained.

The plaintiff, while the action was in the District Court, moved to amend by adding a third count, alleging that the " defendant is the owner and occupant on the day of the purchase of this writ ; that he became the owner by deeds dated May 9th and June 11th, 1845, and has ever since continued the owner and occupant.

According to the strict rules of pleading, this seems to be only an averment of ownership and occupancy on the day of the purchase of this writ. If so, the nonsuit should have been ordered. If it is an allegation of a prior ownership and occupancy, it introduces a new cause of action, for it introduces a cause of action, when the original writ unfolded no cause whatever.

WELLS, J. — The statute of 1821, chap. 45, does not in express terms, make the assignee of the person, against whom the judgment is rendered, fixing the yearly damages, liable for them.

In *Lowell* v. *Shaw & al.*, adm'rs, 15 Maine, 242, the defendant's intestate was held liable for the damages, which became due, while he was the owner, for the whole of the year, though he had been the owner and occupant but a part of the year.

But he could not have been holden to pay any damages, unless they were a charge upon the estate. That decision rests on the principle, that the judgment run with the estate, binding the grantee to pay the yearly damages.

If then, the yearly damages are a charge upon the estate

the owner of it is liable not only for those accruing in his own time, but for all those, which are in arrear before his title commenced.

Such is the rule of law in relation to annuities, charged upon the estate.   *Trinity College* v. *Tunstal, Parson of Sharing-ford,* Cro. Eliz. 810; *Swasey* v. *Little,* 7 Pick. 296.

The Revised Statutes, chap. 126, § 19, provide for a lien upon the mill and mill-dam, with the appurtenances and land, for the annual compensation, with a limitation, which it is unnecessary to consider, for the right of exercising the lien is not now in question.

The twentieth section of the same statute, makes the owner or occupier of the mill, when the action is brought, liable for all the damages due and unpaid.

It is unnecessary to decide whether the provisions of the Revised Statutes will apply to a case, where the annual damages have been established, before their passage.  For the twentieth section, before mentioned, appears rather to be a legislative exposition of the law, as it then existed, than the enacting of a new one.

The defendant having been charged in the first and second counts of the declaration, as the owner and occupier of the mill, the count admitted by the District Court, stating the time when his ownership commenced, and from whom his title was derived, introduced no new cause of action.  The allegation of ownership was sufficient without declaring the time and mode of its commencement.

There is no limitation for this action, except the presumption of payment arising after twenty years.  It is founded on the judgment, with which the defendant is connected by privity of estate.

If the agreement set up by the defendant never had any existence, it could not affect the case.  If it was entered into, but never was performed by the defendant, it would be inoperative.   Nor would a part be equal to a full performance, such as the agreement required.

By the instructions, the defendant was allowed the benefit of

the agreement each year in which it was executed, until it was broken. After it was broken, its continuance would necessarily cease, and could not be renewed without the concurrence of the plaintiff. By the very terms of the agreement, it was to be executed during each year. A failure to do so would terminate it. The special finding of the jury on this part of the case seems to be equivocal, but they probably intended to say, that the agreement was not proved. But it is not necessary to ascertain their meaning.

The price alone of the plaintiff's hay, could not have had any bearing upon the fact, whether the agreement had been executed. It might tend, with other testimony, to show the quality of hay cut upon the plaintiff's land. But the value of hay in the market, depends upon various considerations. Without proof of the market price, which was not introduced, no comparison could be made to test the quality of the plaintiff's hay, which might have brought a higher price, owing to the general scarcity of hay, than to its quality. It might have brought the same price, although of inferior quality. No other testimony was connected with the price or offered to be, rendering the evidence sufficiently relevant, to authorize its admission. *Page* v. *Homans*, 14 Maine, 478.

*Judgment on the verdict.*